This is an appeal from a judgment in favor of the defendants in plaintiff's suit to quiet title to certain real property. We affirm in part and reverse and remand in part.
By its complaint, Drennen Land and Timber Company (Drennen), sought to quiet title to all of the Southwest quarter (SW 1/4) of the Northeast quarter (NE 1/4), and the Southeast quarter (SE 1/4) of the Northeast quarter (NE 1/4) lying south of the Warrior *Page 1168 
River in Section 18, Township 13 South, Range 1 West, situated in Blount County. (See Diagram A.) John J. Angell and his wife, among others, were named defendants. An amendment to the bill added Curtis Standridge and wife as owners of a portion of the land in dispute. John J. Angell died after this action was filed, and his widow proceeded in his behalf, filing an answer and a counterclaim asserting that he had acquired title to a portion of the SW 1/4 of the NE 1/4 (see Diagram B) by deed from the Standridges. Defendants Standridges answered Drennen's complaint and alleged that they had acquired title to a portion of the SE 1/4 of the NE 1/4 (see Diagram C) by deed from Mr. and Mrs. Henry Standridge and also that they had acquired title through adverse possession.
The case was tried without a jury. The trial court and the attorneys took a view of the property during the hearing, following which the trial court decreed:
 "Plaintiff's Complaint to quiet title to the southwest quarter of the northeast quarter of Section 18, Township 13, South, Range 1 West, lying south of Locust Fork of the Black Warrior River, in Blount County, Alabama, [is to] be and is hereby denied and Ola C. Angell is found to own the above described property in fee simple title. [See Diagram B.]
". . . .
 ". . . Plaintiff's Complaint with regards to quieting title to the southeast quarter of the northeast quarter of Section 18, Township 13 South, Range 1 West, lying south of Locust Fork of the Black Warrior River in Blount County, Alabama, [is to] be and is hereby denied and Curtis Standridge and wife, Estelle Standridge are found to own the above described property in fee simple title. [See Diagram C.]"
The underlying basis for the trial court's finding in favor of the defendants was:
 "Defendant Ola C. Angell and her predecessors in title have been in open, adverse, continuous, notorious and exclusive possession of all that part of the southwest quarter of the northeast quarter of Section 18, Township 13 South, Range 1 West, lying south of Locust Fork of the Black Warrior River, in Blount County, Alabama, for a period of more than twenty years next preceding the filing of the Complaint in this case, the Defendant Ola C. Angell and her predecessors in title have paid the taxes on said property for a period of time in excess of twenty years before the filing of the Plaintiff's Complaint, that the Defendant, Ola C. Angell's predecessors in title have cut, sold and removed timber on said property on several occasions between the years 1919 and 1968 and have exercised dominion and control over said property from 1887 to the date of the conveyance of said property to Defendant Ola C. Angell on December 1, 1971.
". . . .
 ". . . Curtis Standridge and wife, Estelle Standridge, and their predecessors in title, have been in open, adverse, continuous, notorious and exclusive possession of all that part of the southeast quarter of the northeast quarter of Section 18, Township 13 South, Range 1 West, lying south of Locust Fork of the Black Warrior River, in Blount County, Alabama, for a period of more than twenty years next preceding the filing of the Complaint in this case, that Defendants Standridge and their predecessors in title have paid the taxes on said property for a period of time in excess of twenty years before the filing of the Plaintiff's Complaint, that the [their] predecessors in title have cut, sold and removed timber on said property on several occasions between the years 1919 and 1968 and have exercised dominion and control over said property from 1887 to the date of the conveyance of said property to Defendants Standridge."
Plaintiff contends upon appeal that (1) it has a record title in the property superior to any asserted by the defendants, and (2) that superior title could not be defeated by a claim of adverse possession by prescription which consisted of occasional acts of *Page 1169 
cutting timber and possession which were not exclusive.
In support of its assertion that it is the holder of record title to the property in dispute, plaintiff offered a deed from one A. Vaughn and wife, executed and recorded in 1884, conveying to Mary T. Gilliam:
 "The Southeast quarter [SE 1/4] of Section 18 Township 13 Range 1 West, the Northeast quarter [NE 1/4] of the Southwest quarter [SW 1/4], Section 18 Township 13 of Range 1 West, and all that portion of the South half [S 1/2] of the Northwest quarter [NW 1/4] lying South of the Warrior River, same Section and Township above mentioned. . . ." (Emphasis added.) (See Diagram D.)
In 1908, W.M. Drennen (sometimes referred to as Mel Drennen or Walter Melville Drennen) began obtaining deeds from the Gilliam heirs. He first acquired a deed from W.A. Gilliam and wife conveying to him a one-ninth interest in
 "The South East quarter [SE 1/4] of Section (18) Eighteen Township (13) Thirteen Range (1) One West. The North East quarter (NE 1/4] of the South West quarter [SW 1/4] Section (18) Eighteen Township (13) Thirteen Range (1) one West and all of that part of the South half [S 1/2] of the North East quarter [NE 1/4] lying South of the Warrior River same section and township as above mentioned. . . ." (Emphasis added.) (See Diagram E.)
During 1909 W.M. Drennen acquired three other deeds also conveying a one-ninth interest in essentially the same described property. In 1910 L.P. and Katie Warren executed a deed conveying to W.M. Drennen a one-ninth interest in property described in the same terms used in the Vaughn-to-Gilliam deed. (See Diagram D.) All of these deeds to W.M. Drennen were recorded in or before 1910.
In 1922, W.M. Drennen acquired and recorded eight quitclaim deeds from various persons, some of whom had earlier conveyed to him their one-ninth interest. Each of these quitclaim deeds conveyed to W.M. Drennen the SE 1/4, the NE 1/4 of the SW 1/4, and that portion of the NE 1/4 south of the Warrior River. (See Diagram E.) L.P. and Katie Warren were not among the grantors of these quitclaim deeds. Plaintiff claims title to the disputed tracts through a series of deeds and wills from the relatives of W.M. Drennen.
Defendants Standridges introduced a deed to one John H. Hambrick, dated April 9, 1887, conveying:
 "That part of the following land East of the Warrior River to-wit: N.W. 1/4 of S.W. 1/4 Sec. 17 Township 13 Range one West and the S.W. 1/4 of N.E. 1/4 and S.E. 1/4 of N.W. 1/4 and N.E. 1/4 of S.W. 1/4 and N.W. 1/4 of S.E. 1/4 Section 18, All in Township 13 Range one West [excepting mineral rights]." (See Diagram F. We note that it is unclear as to what portion of the property in section 18 might be considered "east of the river.")
This deed was recorded on October 16, 1911. A deed from John H. Hambrick and wife to S.T. Rylant, describing the same property, was executed on November 23, 1889, and recorded on March 4, 1913. S.T. Rylant conveyed this land to Louis Johnson by deed dated February 18, 1919. This deed, however, was not recorded.
Standridge also introduced a deed, dated August 19, 1968, from the heirs of Louis Johnson to Curtis Standridge and wife, Estell Standridge, conveying the Southwest quarter (SW 1/4) of the Northeast quarter (NE 1/4), and the Southeast quarter (SE 1/4) of the Northwest quarter (NW 1/4) of Section 18, Township 13 South, Range 1 West (see Diagram G), "80 acres, more or less," with the following additional description:
 "It being the intention to convey herewith all of the lands of which said Deceased died seized and possessed in said Section, Township and Range, whether herein correctly described or described at all."
This deed was recorded in 1968.
Following this, Standridge introduced a deed from himself and his wife to John J. Angell, Jr., and wife, Ola C. Angell, executed on December 1, 1971, containing the following description: *Page 1170 
 "All that part of the SW 1/4 of NE 1/4 and that part of the SE 1/4 of NW 1/4 all in Section 18, Township 13 South, Range 1 West, lying south of the Locust Fork of the Black Warrior River. [See Diagram H.]"
This deed was recorded on December 1, 1971.
As to the disputed tract in the SE 1/4 of the NE 1/4, Standridge introduced a deed from Henry and Ella Standridge to himself and his wife conveying, among other things:
 "The North half [N 1/2] of the North East quarter [NE 1/4], the South East quarter [SE 1/4] of the North East quarter [NE 1/4], and the North East quarter [NE 1/4] of the North West quarter [NW 1/4] of Section eighteen, in Township thirteen south of Range one West of Huntsville Meridian in Alabama. . . ." (See Diagram I.)
This deed was executed on December 1, 1965, and recorded March 5, 1973.
Certain timber deeds were also introduced into evidence. In 1937, persons under whom plaintiff claims conveyed all of the merchantable timber in that part of the Southwest quarter (SW 1/4) of the Northeast quarter (NE 1/4) of Section 18, Township 13, Range 1 West, lying south of the Black Warrior River, being 20 acres more or less. This deed was recorded in 1937. Again, by deed executed in 1942, plaintiffs' predecessors conveyed the merchantable timber on 20 acres in the South half (S 1/2) of the Northeast quarter (NE 1/4) of Section 18, Township 13, Range 1 West, lying south of the Black Warrior River. This deed was recorded on October 23, 1942.
The defendants also introduced timber deeds. One of these, executed and recorded on January 26, 1939, by Clemmine, C.L., Mable, Olen, and Mary Wesson, conveyed the timber in the Southeast quarter (SE 1/4) of the Northeast quarter (NE 1/4) of Section 18, Township 13 South, Range 1 West. Another timber deed was executed January 26, 1939, by Louis and Judith Johnson, conveying that part of the Southwest quarter (SW 1/4) of the Northeast quarter (NE 1/4), Section 18, Township 13, Range 1 West, lying north and east of the Black Warrior River, "being all the land owned by us in Hicks Bend." Although defendant Standridge introduced another timber deed conveying timber on "[t]he SW 1/4 of NE 1/4, SE 1/4 of NW 1/4, that part of SE 1/4 of NE 1/4 that lies South and East of Warrior River" in Section 18, Township 13, Range 1 West, this document, dated September 30, 1968, was unsigned and unrecorded.
It is well settled that:
 "In a case tried ore tenus, there is a presumption of correctness and the trial court's findings will not be disturbed unless they are palpably wrong, without supporting evidence or manifestly unjust. Gertz v. Allen, 376 So.2d 695 (Ala. 1979); Sudduth v. Sudduth, 366 So.2d 1102 (Ala. 1979). . . ."
Silverman v. Charmac, Inc., 414 So.2d 892, 894 (Ala. 1982).
 "[T]his rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence; every presumption will be indulged in favor of the court's findings, and those findings will not be disturbed unless palpably wrong. . . ."
Gulledge v. Frosty Land Foods Int'l, Inc., 414 So.2d 60, 63
(Ala. 1982). Moreover, the presumption of correctness of the trial court's findings is "especially strong in adverse possession cases," Scarbrough v. Smith, 445 So.2d 553, 556
(Ala. 1984), and "this court will rarely disturb the judgment of the trial court in a boundary line dispute or adverse possession case which turns on issues of disputed facts."Thomas v. Davis, 410 So.2d 889, 892 (Ala. 1982).
With these principles in mind, we begin our review of the trial court's findings in this case. First, however, we must determine whether plaintiff Drennen is correct in its assertion that it is the holder of record title to the disputed tracts. We find that it is not.
The 1884 deed from Vaughn to Gilliam conveyed property described as "that portion of the South half [S 1/2] of the *Page 1171 
Northwest quarter [NW 1/4] lying South of the Warrior River," in addition to other property. It is clear that the property conveyed to Gilliam (see Diagram D) does not include the property currently under dispute (see Diagram A). "A deed that describes land by governmental subdivisions does not convey other land or an area outside of such description." M.C. DixonLumber Co. v. Mathison, 289 Ala. 229, 237, 266 So.2d 841, 848
(1972). Clearly, then, the Gilliam heirs had no actual title to "that part of the South half [S 1/2] of the North East quarter [NE 1/4] lying South of the river," which they subsequently conveyed to W.M. Drennen. All W.M. Drennen acquired from the Gilliam heirs was color of title to the disputed lands in the northeast quarter. Color of title is defined as "a writing which, in appearance, purports to transmit title or the right of possession, but which, in reality, does not." Davis v.Townsend, 435 So.2d 1280, 1282 (Ala. 1983). The Gilliam heirs could not transfer title which they did not have.
As to the portion of the disputed property claimed by defendant Angell (the southwest quarter of the northeast quarter lying south of the river — see Diagram B), we are of the opinion that she, too, has only color of title. The Standridge deed to her described this property correctly, as did the 1968 Johnson-to-Standridge deed. (Because the Johnson deed conveyed the entire quarter/quarter section, it clearly included that portion south of the river.) However, the 1887 and 1889 deeds introduced by Standridge referred to propertyeast of the river which may or may not include the tract south
of the river. We need not make this determination, as a finding that Mrs. Angell had color of title under the Standridge and Johnson deeds is sufficient for our decision.
Section 6-5-200, Code of 1975, provides in pertinent part:
 "(a) Adverse possession cannot confer or defeat title to land unless:
 "(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
 "(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; . . ."
Both plaintiff Drennen and defendant Angell had recorded color of title 10 years before this action was commenced. Although defendant Angell's deed had not been recorded for 10 years at the time this suit was commenced, she may add to her recordation time "the time during which the deeds or color of title of those through whom [s]he claims [i.e., the Standridges] have been on record," which brings her within the 10 years required by the statute. See § 6-5-200 (b).
The mere fact that a claimant's deed or color of title has been recorded for the 10 years next preceeding the commencement of the action does not confer upon the claimant title to the property. Recordation for 10 years is simply one of the requirements under the 10-year adverse possession statute, §6-5-200. This recordation must be coupled with the necessary elements of adverse possession for the 10-year period in order to establish title by adverse possession. See Parrish v. Davis,265 Ala. 522, 92 So.2d 897 (1957). The following instructive language is found in Cameron v. Union Hill Baptist Church,350 So.2d 314, 315 (Ala. 1977):
 "One claiming under [§ 6-5-200] must also establish the elements of adverse possession as stated by the court in Long v. Ladd, 273 Ala. 410, 412-413, 142 So.2d 660, 662 (1962):
 "`. . . (1) such possession as the land reasonably admits of, (2) openness and notoriety and exclusiveness of possession, (3) hostility toward everybody else in respect of possession, (4) holding possession under claim of right or claim of color of title, and (5) continuity for statutory period of ten years.'" *Page 1172 
To determine whether an adverse claimant's acts were "a sufficient indication to all the world that [he] claimed ownership of the property in question . . . we must look collectively to all the possessory acts of the claimant." Hurtv. Given, 445 So.2d 549, 551 (Ala. 1983). An adverse possessor need only use the land "in a manner consistent with its nature and character — by such acts as would ordinarily be performed by the true owners of such land in such condition." Hand v.Stanard, 392 So.2d 1157, 1160 (Ala. 1980).
The land involved in the present case is predominantly timberland. Although there was evidence that Drennen was paying taxes on this property and there was some testimony to the effect that it had placed this property under the management of a firm called Resource Management, Drennen has failed to show any acts of actual adverse possession during the 10 years preceeding the commencement of its action. In contrast, defendant Curtis Standridge testified that he sold the timber on this tract of land in 1968 and that no one from or representing Drennen protested this action. Additionally, he stated that he had paid the taxes on this portion of the disputed property from the time he purchased it from the Johnson heirs in 1968 until the time he sold it to the Angells in 1971. Mrs. Angell testified that, after she and her husband purchased this tract, they frequently held family picnics on this property; they had the property surveyed; they cleared underbrush; they marked off homesites for themselves and their children; and they paid the taxes on this property continuously from the date of purchase. No one from or representing Drennen ever objected to the Angells' activities.
Viewing the acts of Standridge and those of the Angells collectively, we find these acts sufficient to establish adverse possession under § 6-5-200. Consequently, the trial court's finding that Angell had acquired title through adverse possession[1] to that part of the southwest quarter of the northeast quarter lying south of the Warrior River is due to be affirmed.
Much of what we have said above concerning Drennen also applies to that part of the disputed property located in the southeast quarter of the northeast quarter (see Diagram C). Drennen has made no showing of any acts which would amount to adverse possession in the 10 years next preceeding this action. Therefore, it cannot have obtained title under § 6-5-200.
The Standridges' deed to this portion of the property executed by Henry and Ella Standridge in 1965 was not recorded until 1973, less than 10 years before the commencement of this action. Consequently, the Standridges do not meet the requirement of § 6-5-200 (a)(1). While they may have paid the taxes on this property for the 10 years as required by §6-5-200 (a)(2), supra, they have failed to show the requisite acts of adverse possession. Curtis Standridge sold the timber on this land in 1968, but has failed to show continuous possessory acts since that time. Sporadic acts of cutting timber are insufficient to establish the necessary dominion for adverse possession. Thomas v. Davis, 410 So.2d 889 (Ala. 1982);Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964).
Nor has either party established adverse possession for the 20-year prescriptive period. It is a fair conclusion from the evidence that timber had been cut from this portion of the disputed land by both the Standridges and Drennen's grantors, and others (the unidentified Wessons who executed a timber deed in 1939) as well. As we noted above, sporadic acts of cutting timber do not amount to adverse possession. Moreover, if both parties were exercising possessory rights in cutting the timber, then neither had the exclusive possession which must be established to successfully maintain a claim of adverse *Page 1173 
possession.[2] "One of the essential elements of adverse possession is that the possession must be exclusive. `Two persons cannot hold the same property adversely to each other at the same time.'" Beason v. Bowlin, 274 Ala. 450, 454,149 So.2d 283 (1962). We therefore conclude that the trial court's finding that the Standridges had acquired title through adverse possession to that part of the southeast quarter of the northeast quarter lying south of the Warrior River was incorrect and must be reversed.
In summary, the trial court's finding as to defendant Angell's ownership of the property located in the southwest quarter of the northeast quarter is due to be, and it is hereby, affirmed; the trial court's finding as to the ownership by the defendants Standridge of the property located in the southeast quarter of the northeast quarter is hereby reversed and the cause remanded.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] We note that the trial court based its finding on a determination that Angell had established adverse possession for the 20-year prescriptive period. As we shall demonstrate below, this determination is not supported by the facts. Nevertheless, the trial court's ultimate finding of title in Angell through adverse possession is correct under our analysis set forth above.
[2] This is the same situation which existed with regard to that portion of the disputed property located in the southwest quarter of the northeast quarter (the Angell property). Both Drennen's grantors and the persons under whom the Angells claimed had cut timber. Therefore, neither party could acquire title by adverse possession under the 20-year prescriptive period. *Page 1174 
[EDITORS' NOTE: DIAGRAM A IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: DIAGRAM B IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: DIAGRAM C IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1175 
[EDITORS' NOTE: DIAGRAM D IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: DIAGRAM E IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: DIAGRAM F IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1176 
[EDITORS' NOTE: DIAGRAM G IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: DIAGRAM H IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: DIAGRAM I IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1177