This is an appeal by the plaintiffs, Thomas J. Bergen, Robert J. Bowler, John T. Bowler, Nancy Hatfield, and Richard Hatfield, from an order denying their motion for JNOV or, in the alternative, a new trial. The trial court had directed a verdict for the defendants, Robert M. Dixon and Michael C. Dixon, in plaintiffs' suit to quiet title. We affirm.
The plaintiffs' complaint to quiet title involved a 16-acre tract of land (hereinafter "Lot 16") in Barbour County. The plaintiffs subsequently amended their complaint to include a suit in ejectment and to add Nancy and Richard Hatfield as parties plaintiff.
The defendants answered the complaint and the amended complaint and pleaded the statute of limitations and adverse possession as bars to the plaintiffs' claims. The defendants also counterclaimed, asking that title be quieted in them, claiming title to Lot 16 by deed and by adverse possession. The trial court denied the defendants' motion for summary judgment, and the case proceeded to a jury trial.
The plaintiffs base their title to Lot 16 on a deed conveying the subject property from Alabama Pecan Company to Ella Bowler dated May 18, 1926. This deed was recorded in the Barbour County probate office on June 28, 1926. In 1927, Ella Bowler died testate, leaving four surviving children. She lived in Wisconsin at the time of her death and her will was probated there. The will was never probated in Alabama.
Under the terms of her will, Ella Bowler left the property in trust to her children and named her brother, Emil Roloff, as trustee. Pursuant to the will, Emil Roloff deeded the subject property to James Bowler, John T. Bowler, Jean Bowler Bergen, and Robert T. Bowler, the surviving children of Ella Bowler. The deed was dated March 17, 1947, and was recorded on April 30, 1947, in the Barbour County probate office. Through various intra-family conveyances, which were also duly recorded, title to Lot 16 was transferred to the plaintiffs as follows: Thomas J. Bergen, one-fourth interest; John T. Bowler, one-fourth *Page 1276 
interest; and Robert J. Bowler, one-half interest.
Nancy Hatfield became acquainted with plaintiff Thomas Bergen while she was working for an attorney who had been employed by Bergen to check the title to Lot 16 in preparation for the sale of Lot 16. Mrs. Hatfield actually did the title search herself. During this time, she and her husband, Richard Hatfield, entered into an option contract with the plaintiffs to buy Lot 16, making their purchase of Lot 16 subject to the plaintiffs' getting their title cleared.
After the Hatfields had obtained the option to buy Lot 16, Nancy Hatfield contacted Bill Dunn, who was the real estate manager for Dixon Lumber Company, owned by the defendants. The Dixons or Dixon Lumber Company owned the 1200-acre tract of land, known as the "Reeder Place," surrounding Lot 16. Mrs. Hatfield contacted Dunn to obtain his assistance in determining whether a particular road that entered Lot 16 was a county road. It was Dunn who first informed Mrs. Hatfield of the defendants' claim to the property.
At trial, Mrs. Hatfield testified about the title search she had made on Lot 16. Mrs. Hatfield was asked whether, after locating the 1926 recorded Bowler deed, she searched any further back. She responded:
 "A. At some point I think I did, but because it was the subdivision and because it was so much work put into that subdivision, I knew those people had title to the subdivision in 1926, or prior to that, and this was the first time this lot had sold, and, therefore, it was the original owners of the property after the subdivision, and I felt real good about it because title was so good afterwards."
She further testified that when she first checked the title to the property for her employer, she did not find any conveyances to the Dixons. However, after learning from Mr. Dunn of the Dixons' claim to the property, she checked the courthouse records again, this time as an interested party. Mrs. Hatfield testified that she found a deed from H.W. Deshazo to M.C. Dixon, which had been recorded in 1956. She testified that she then checked the Deshazo deed to determine the origin of Mr. Deshazo's title, that she "absolutely checked it all the way back to the U.S. Patent which is a long time," and that she found that "H.W. Deshazo never owned that property ever." It is under this Deshazo deed that the defendants claim their interest.
Defendants, Robert M. Dixon and Michael C. Dixon, are the surviving children of M.C. Dixon, who purchased the property from Deshazo in 1956. The Dixons claim that the property has been in their continuous possession since 1956. At trial, the defendants put on ten witnesses who testified as to various acts of possession performed on the land by the defendants since 1956. There is no dispute that both the plaintiffs and the defendants have paid the taxes due on the land.
At the completion of the plaintiffs' case in chief, the defendants moved for a directed verdict, which was denied by the trial court. At the close of the evidence, the defendants moved again for a directed verdict. The trial court granted this motion. Subsequently, the plaintiffs moved for a JNOV or, in the alternative, a new trial, which was denied by the trial court. This appeal followed.
The plaintiffs raise the following issues:
(1) Did the plaintiffs prove a prima facie case in ejectment?
(2) Did the defendants prove their right to the property by adverse possession so as to justify the trial court's judgment quieting title in them?
The dispositive issue on appeal is whether the defendants proved uncontrovertedly their claim for adverse possession, thus entitling them to a judgment quieting title in them. Although the record reflects that, in directing a verdict for the defendants, the trial court found that the plaintiffs did not meet their burden of proof in making out a prima facie case for ejectment, this Court need not address this aspect of the case since, in Alabama, title by adverse possession will overcome even a superior record title. Section 6-5-200, Code of 1975; *Page 1277 
see also, Courtney v. Boykin, 356 So.2d 162 (Ala. 1978). As this Court stated in Osborn v. Johnson, 468 So.2d 103 (Ala. 1985):
 "There are only two situations in which a directed verdict is proper: (1) where there is no scintilla of evidence to support an element essential to the claim or (2) where there is no disputed issue of fact upon which reasonable men could differ. Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981). A directed verdict is appropriate in the second situation only 'if the facts and inferences point so strongly and overwhelmingly in one party's favor that reasonable persons could only arrive at one verdict.' Bickford v. International Speedway Corp., 654 F.2d 1028, 1031 (5th Cir. 1981)."
To determine the propriety of the trial court's directed verdict for the defendants on their claim of adverse possession, it is necessary for this Court first to determine whether the acts of possession shown by the defendants were sufficient to satisfy each and every element of adverse possession, and whether the evidence of those acts was uncontroverted.
There are two types of adverse possession recognized in Alabama: statutory adverse possession and adverse possession by prescription. In Tidwell v. Strickler, 457 So.2d 365, 368 (Ala. 1984), this Court set forth the elements necessary for each:
 "Both require the common elements of actual, exclusive, open, notorious, and hostile possession under a claim of right, but the statutory version, which requires possession for only ten years rather than the twenty years required by the prescription version, also requires that the possessor hold under color of title, have paid taxes on the property for ten years, or have derived his title by descent or devise. Code 1975, § 6-5-200. Downey v. North Alabama Mineral Development Co., 420 So.2d 68 (Ala. 1982)."
Under the facts of this case, defendants qualify under either theory of adverse possession.[1]
The defendants took actual possession of this property in 1956 pursuant to a deed from H.W. Deshazo. Although the face of the deed reflects "Range 28" instead of "Range 23," additional descriptive words in the deed itself and testimony given in court indicate that no confusion existed as to whether this deed pertained to Lot 16. Color of title is defined as "a writing which, in appearance, purports to transmit title or the right of possession, but which, in reality, does not."Davis v. Townsend, 435 So.2d 1280, 1282 (Ala. 1983). However, not only did defendants prove color of title by the recorded deed for more than ten years preceding the filing of this lawsuit, but defendants also proved that they had "annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action." Section6-5-200(a)(2), Code of 1975. As previously noted, there is no dispute that the defendants, as well as the plaintiffs, had paid the taxes on Lot 16. Plaintiffs raise the question whether the evidence of possession offered by the defendants met the requirements of actual, exclusive, open, notorious, and hostile possession.
As this Court held in Drennen Land Timber Co. v. Angell,475 So.2d 1166, 1172 (Ala. 1985):
 "An adverse possessor need only use the land 'in a manner consistent with its nature and character — by such acts as would ordinarily be performed by the true owners of such land in such condition.' Hand v. Stanard, 392 So.2d 1157, 1160 (Ala. 1980)."
See also Limbaugh v. Richardson, 402 So.2d 957 (Ala. 1981). This rule was first *Page 1278 
enunciated in Goodson v. Brothers, 111 Ala. 589, 20 So. 443,445 (1896):
 "To the constitution of the first element [possession], — such possession as the land reasonably admits of — it is not necessary that land which is uninclosed and uncultivated should be inclosed and cultivated, merely because it was capable of inclosure and cultivation. The possession is gauged by the actual state of the land, and not with reference to its capability of being changed into another state which would reasonably admit of a different character of possession. Openness and notoriety and exclusiveness of possession are shown by such acts in respect of the land in its condition at the time as comport with ownership, — such acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use, and in preventing others from the use of it as far as reasonably practicable; and near akin to these are the acts evidencing the element of hostility towards all the world."
Further, this Court has held:
 "To determine whether an adverse claimant's acts were 'a sufficient indication to all the world that [he] claimed ownership of the property in question . . . we must look collectively to all the possessory acts of the claimant.' Hurt v. Given, 445 So.2d 549, 551 (Ala. 1983). . . ."
Drennen Land Timber Co., 475 So.2d at 1172.
It is undisputed that Lot 16 is open, unimproved land with timber growing on it. It is also undisputed that this 16-acre tract of land is located within a 1200-acre tract of land owned by the defendants known as the "Reeder Place." In Hurt v.Given, 445 So.2d 549, 551 (Ala. 1983), this Court noted that "[t]he specific question to be answered then is what acts would ordinarily be performed by the true owners of what the record shows to be rural, wooded land."
There was uncontroverted testimony by the defendants and the defendants' witnesses that the defendants have maintained good forestry management on Lot 16 since 1956, including the selective cutting of timber, pulpwooding (which involves the cutting of diseased or dead trees), the planting of trees, the maintaining of fire lanes, and the painting or marking of boundaries. The testimony indicated that Lot 16 was treated the same as the surrounding property owned by the defendants.
The defendants testified that they never knew of the plaintiffs' claims until immediately prior to the filing of this lawsuit. Plaintiff Thomas Bergen admitted that he (and his family) had never seen, or even been on, the property and that he had tried to locate the property on two occasions but hadfailed.
There was direct evidence that boundaries on the property were marked first by painted wooden signs and then by painted boundary lines beginning in 1964. Furthermore, it was established that an old road that entered Lot 16 had been blocked by defendants since 1965 to prevent the public from dumping trash. A photograph introduced by the plaintiffs depicted an old wooden sign posted near this access road. Although this sign bore no writing, there was direct testimony that hundreds of signs like that had been painted and posted by the defendants on the boundary lines.
A county official's testimony was uncontroverted that an easement extending over onto Lot 16 had been deeded to the county by M.C. Dixon on May 27, 1961. The terms of the deed were such that the easement would terminate when the county completed its work on a certain bridge.
Defendants also adduced testimony concerning the clearing of an acre and a half on Lot 16 in 1977 or 1978 for purposes of creating a field on which to hunt. The plaintiffs attempted to contradict this evidence by demonstrating that the clearing was actually done on Lot 17 and that the clearing was done prior to the time the defendants took possession of the property. From the photographs introduced at trial, it appeared that there were cleared areas on both Lots 16 and 17. However, there was uncontroverted direct testimony by several witnesses that the defendants had cleared the area on Lot 16 for the purposes of hunting. *Page 1279 
The plaintiffs rely in part on the proposition that sporadic cutting of timber is insufficient to establish adverse possession. Rutland v. Georgia Kraft Co., 387 So.2d 836 (Ala. 1980). However, the cutting of timber was not the only act of possession of Lot 16 by the defendants. Nevertheless, as this Court held in Rohrer v. Allen, 415 So.2d 1054 (Ala. 1982), the cutting of timber is a factor to be considered.
When viewed collectively, the acts of the defendants, described above, are sufficient to establish the requirements of open, notorious, exclusive, and hostile possession by the defendants. The testimony revealed that the defendants' acts of possession began in 1956 and were continuous to the filing of this lawsuit. For these reasons, we hold that the trial court was correct in directing a verdict for, and quieting title in, the defendants, and, therefore, we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES and ADAMS, JJ., concur.
[1] Neither party argues or raises the coterminous landowners exception, which provides that "[a] coterminous landowner may acquire title by adverse possession if he proves that he had open, notorious, hostile, continuous, and exclusive possession of the property for ten years. Tidwell v. Strickler,457 So.2d 365, 368 (Ala. 1984). He need not show color of title or any other requirements of Code of 1975, § 6-5-200. Id." Lee v.Brown, 482 So.2d 293, 295 (Ala. 1985).