SHORES, Justice.
This is an action under § 6-6-540, Code of Alabama 1975, filed by Wolf Bay Associates, to quiet title to real property situated in Baldwin County, Alabama, against certain named defendants.[1] The tract in issue *766 consists of approximately 2.4 acres located on the tip of a peninsula of land that is bound by the Pearl River on the west, Wolf Creek on the south, and Miflin Creek on the east. Plaintiff, Wolf Bay Associates, claims this land as part of Lot 5 in Section 7, Township 8 South, Range 5 East, through a certain chain of title. The defendants claim to be the owners of the land and claim that it is a part of Section 18, Township 8 South, Range 5 East, through a different chain of title.
On the original United States Government Survey of 1830, the peninsula is shown, but the section line does not traverse the peninsula. The plaintiffs position is that any land that has accreted at the end of the peninsula is part of Lot 5 in Section 7, even if an imaginary section line drawn across the peninsula would show some of the land to be south of the section line, thus placing it in Section 18. The defendants’ position is that any land that an imaginary section line would place in Section 18 belongs to them by their chain of title, and, in the alternative, they claim the land by adverse possession.
The case was heard June 14-16, 1989. The trial judge heard ore tenus evidence and issued the following order:
“FINAL DECREE
“This cause was submitted to the Court on the Plaintiffs Bill of Complaint and Amendment thereto, and the Defendant’s Answer to said Complaint and Amendment to their original answer and upon testimony [presented] ore tenus and on the arguments of counsel for Plaintiff and Defendants made by way of their briefs and upon consideration of all of this, the Court finds:
“That the plaintiff is entitled to the relief it seeks in its complaint and amendment to the same; that the Defendants are not entitled to the relief they seek in their answer and amendment to the same.
“IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
“That the Plaintiff is the owner of the property hereinafter described:
“Lot 5 in Section 7, Township 8 South, Range 5 East, as is depicted on a survey of Township 8 South, Range 5 East District East of Isle of New Orleans, and East of Pearl River, surveyed by Silas Dinsmore, Jr., in the year 1830, less a two acre tract, which is not a part of this litigation,
and that Jerry C. Boyett and Cordelia F. Boyett and George H. Skipper and Gary D. Skipper have no right, title or interest in the aforesaid land.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that George H. Skipper and Gary D. Skipper, and Jerry C. Boyett and Cordelia F. Boyett own no interest in that part of Section 18, Township 8 South, Range 5 East, which lies North and East of Wolf Creek, North of Wolf Bay and West of Miflin Creek. They have failed to establish title in said property by virtue of ten years’ adverse possession and have failed to establish title under the rule of repose or prescription.
“The cost is hereby taxed against the Plaintiff and Defendants jointly.
“Done this 5th day of October, 1989.
“/s/ James H. Reid
Circuit Judgé”
Boyett and Skipper then filed a motion for JNOV or, in the alternative, for a new trial, which was denied. This appeal followed.
Boyett and Skipper contend that Wolf Bay Associates failed to prove that it was in peaceable possession of the property. Boyett and Skipper also claim to have acquired title to the tract by prescription and/or statutory adverse possession.
The requirements for an in •personam action to quiet title are found at §§ 6-6-540 and 6-6-541, Code 1975:
“§ 6-6-540. Right of action to settle title to lands by person in peaceable possession thereof.
*767 “When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, ... and no action is pending to enforce or test the validity of such title, claim or encumbrance, such person ... so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same.”
“§ 6-6-541. Contents of complaint.
“The complaint authorized by section 6-6-540 must describe the lands with certainty, must allege the possession and ownership of the plaintiff and that the defendant claims, or is reputed to claim, some right, title or interest in, or encumbrance upon, such lands and must call upon him to set forth and specify his title, claim, interest or encumbrance and how and by what instrument the same is derived and created.”
This Court said in Mt. Gilead Church Cemetery v. Woodham, 453 So.2d 362 (Ala.1984):
“A suit to quiet title under these Code sections requires peaceable possession and a claim of title, not actual ownership. Standard Contractors Supply Co. v. Scotch, 247 Ala. 517, 25 So.2d 257 (1946). Isolated acts by the defendant, indicating possession but not amounting to interference with plaintiffs peaceable possession, do not defeat plaintiffs claim. Denson v. Gibson, 392 So.2d 523 (Ala.1980); Adams v. Bethany Church, 380 So.2d 788 (Ala.1980).”
Id. at 365. In Adams v. Bethany Church, 380 So.2d 788 (Ala.1980), we said:
“Merely going on the property which is at the time in the actual possession of someone else, and claiming title to it and warning others off it, does not constitute possession such as would defeat an action to quiet title. Family Land & Investment Co. v. Williams, 273 Ala. 273, 138 So.2d 696 (1962); Myers v. Moorer, 273 Ala. 18, 134 So.2d 168 (1961). Isolated acts by the defendant in a quiet title action indicating possession, but not in fact amounting to interference with plaintiffs peaceable possession will not bar a determination of title in the plaintiff. Ford v. Washington, 288 Ala. 194, 259 So.2d 226 (1972); Patronis v. West Dauphin Corporation, 280 Ala. 442, 194 So.2d 845 (1967). What constitutes peaceable possession will vary as it is a determination based on the facts in each case. Williams v. Romano, 289 Ala. 190, 266 So.2d 750 (1972); Ford.”
Id. at 791.
Boyett and Skipper also claim title by adverse possession. There are two types of adverse possession recognized in Alabama: statutory adverse possession and adverse possession by prescription. Bergen v. Dixon, 527 So.2d 1274 (Ala.1988). The elements necessary for each were set forth by this Court in Tidwell v. Strickler, 457 So.2d 365, 368 (Ala.1984):
“Both require the common elements of actual, exclusive, open notorious, and hostile possession under a claim of right, but the statutory version, which requires possession for only ten years rather than the twenty years required by the prescription version, also requires that the possessor hold under color of title, have paid taxes on the property for ten years, or have derived his title by descent or devise. Code 1975, § 6-5-200. Downey v. North Alabama Mineral Development Co., 420 So.2d 68 (Ala.1982.)”
Code of Alabama 1975, § 6-5-200, provides in pertinent part as follows:
“(a) Adverse possession cannot confer or defeat title to land unless:
“(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action.
“(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
“(3) He derives title by descent cast or devise from a predecessor in the *768 title who was in possession of the land....”
See Doss v. Duggan, 555 So.2d 116, 117 (Ala.1989).
The testimony reflects that William D. Moody, managing partner of Wolf Bay Associates, purchased the property in July 1986, from Buddy Bone, who had purchased the property from Champion International Corporation, which had merged with St. Regis Paper Company. Before purchasing the land, Wolf Bay required Buddy Bone to furnish it with a survey. Ed Hand made a survey for Bone, which encompasses all the land in controversy and places it in Section 7. The plaintiffs presented evidence of a chain of title from Wolf Bay back to the United States Government. The conveyance from the Government was made in accordance with the Government survey of 1830. That survey was made in 1830 by Silas Dinsmore, Jr., who made field notes and drew a plat that placed the tract in question in Section 7.
The dispute appears to have arisen because of an erroneous survey made in 1963 by A. B. Allen. He established a line from the northeast corner to the northwest corner of Section 18, Township 8 South, Range 5 East, and made a plat showing the property south of this line to be a part of Section 18. Apparently, Allen told Mr. Clarke, who was the owner of most of Section 18, that the tip of the peninsula belonged to him. The Merchant’s National Bank handled the Clarke Estate and later sold Clarke’s interest in Section 18.
H. L. Yo made plats of all the land in Baldwin County for the tax assessor's office in 1979, when all the land was reappraised. In drawing the plats of Sections 7 and 18, Yo treated the tip of the peninsula as a separate tract of land and placed it in Section 18. Darlene Eddins, the chief clerk with the Baldwin County tax assessor’s office, testified that the first time the plats in that office showed the peninsula part of Lot 5 as extending into Section 18 was in 1979 when it was mapped by Yo. She said that St. Regis Paper Company and its successors had continuously assessed Lot 5 down to the present date. She stated that the parcel numbers used in the assessment were created by Yo and not by the property owners.
George Skipper, a defendant in this suit, purchased a tract described a “two acres more or less in Wolf Bay in Section 18-8-5” from the Merchant’s National Bank, which was liquidating the Clarke Estate. This is the tract now in dispute. George Skipper is a real estate developer who had been in business in Baldwin County for 25 years at the time this case was heard. He made a written offer to the bank to purchase a tract. Don Harper, a bank employee, responded by letter to George Skipper, “You will recall that we had informed you that Title Insurance could not issue a title policy covering the peninsula in Section 18 for the reasons that it was not described in the original government survey.” (R-169) George Skipper testified on cross-examination as follows:
“Q. And you knew then that it was not, according to his opinion, not in Section 18?
“A. No. I knew there was something wrong with the description on the survey — I mean, on the government survey.
“Q. Something was wrong with the description?
“A. Right, that was the reason they couldn’t describe it. It didn’t say anything about eighteen.
“Q. But it did inform you that they wouldn’t give you title insurance on it?
“A. Correct.
“Q. You knew you had a problem when you started?
“A. No. The description only.
“Q. But you did get into a problem, though, over this piece of land; didn’t you?
“A. Have a problem, yeah.
“Q. Besides this one?
“A. Right.
“Q. You were involved in a lawsuit with Merchant’s National Bank over this property?
“A. Well, it started with the same thing, same piece of property.
*769 “Q. And ended up with a lawsuit including Merchant’s National Bank?
“A. Right.
“Q. And as a result of that lawsuit, a deed was made to you by the Merchant’s Bank wherein the circuit judge ordered them to convey the property to you; did they not?
“A. Correct.
“Q. Do you claim any land in Section 7-8-5?
“A. No.
“Q. And if this property we’re dealing with is in Section 7-8-5, it’s not yours? Is that a correct, fair statement?
“A. It’s not in 7-8-5.” (R-169 through -171.)
Despite the fact that George Skipper could not get title insurance, he purchased a tract of land (the tract now in dispute) in February 1980 that included a parcel described as two acres, more or less, north of Wolf Bay in Section 18, Township 8 South, Range 5 East. The deed stated: “The above described property is conveyed SUBJECT TO: 1. Any state of facts which would be revealed by inspection or an accurate survey of the property_” (Defendants’ ex. 21.) George Skipper testified that he spoke to Ed Hand at Perry Hand Surveying Company about obtaining a survey of the property. However, Ed Hand testified that he had never talked to George Skipper about a survey.
George Skipper attempted to get an easement from St. Regis and then from Champion for a road to the tract. Patrick Ryan, a 30-year employee of Champion International, testified that Mr. Skipper requested an easement and that he investigated the matter for Champion. He does not recall seeing fenceposts, nor does he recall seeing “no trespassing” signs. He did not find a land marker. He had only the word of Mr. Skipper that Skipper owned the property. He testified that there was no indication to him of ownership of the peninsula by anybody other than Champion. George Morris, a retired employee of St. Regis, also testified that he had never recognized title in the tract in question in anybody except St. Regis.
George Skipper was never able to acquire the easement. He sold this tract to Jerry C. Boyett in July 1982. Boyett testified that George Skipper told him that he owned the land and that it was in Section 18. A week or 10 days before the lawsuit was filed, Boyett placed posts along the imaginary northern line of Section 18 and posted “no trespassing” signs.
Skipper and Boyett contend that the tract in question is part of Section 18 and was previously part of the Clarke Estate, which the bank was liquidating. They presented the testimony of W. P. Whiddon, who came to Baldwin County in 1957 as manager of the John D. Clarke Estate. He testified that from that time until this lawsuit, so far as he knew no one other than the Clarke Estate had made any claim to this tract. However, Whiddon had never seen a document of any sort that indicated that Mr. Clarke owned this property.
They also presented the testimony of Donald L. Harper, who was the trustee for the Merchant’s National Bank for the Clarke Estate. Harper testified that he had a conversation in 1976 with a land surveyor for St. Regis named Stafford concerning the location of the line between St. Regis’s land and the land of the Clarke Estate. According to Harper, Stafford said the line was well marked with concrete markers. He testified that he went on the line and put up signs on the corner and along the marked line. Harper said that he went on the land with George Skipper in May 1977 and that at that time the line was still obvious. Harper testified that the Clarke Estate owned land in Section 18, but did not own any land in Section 7. Harper did not have the land surveyed for the Clarke Estate. When asked if he told George Skipper that he could not give him a good title to this property, Harper replied, “That’s right.” (R. 262.)
Skipper and Boyett presented the testimony of Joe Richardson, a real estate agent for Buddy Bone Realty, who said he had been on the property some 20 or 30 times and that he had seen a blazed land line on the property and that there were posts or pilings in the water. They also *770 presented the testimony of Berkley Smith, who had been familiar with the property since 1938. He testified to seeing a concrete marker on the property as well as a stake in the water, which he said marked the section line.
Noel Edward Hand, a registered land surveyor, testified that he had surveyed the land in 1986. The survey was made in anticipation of William D. Moody’s purchase of the land from Buddy Bone. Hand had been on the tract approximately six times. His survey found the tract to be a part of Section 7. The testimony of Joe McKinley, also a surveyor, was admitted by deposition. It was his testimony that the tract was in Section 7, not Section 18.
Claude W. Arnold, a professional survey- or and civil engineer since 1946, also testified that he had surveyed the property using the original field notes made in 1830. It was his testimony that the field notes regarding Section 7 include the tract in question and that the field notes regarding Section 18 do not. Finally, Richard J. Williams, a registered land surveyor, who had previously surveyed the property and showed it as part of Section 18, testified. It was Williams’s testimony that he had made a mistake, and that the tract was part of Section 7 because the land had accreted:
“Q. [Mr. Brantley] First of all, did you prepare to come and testify as a witness for Mr. Owen [defendant’s counsel] prior to today, get together with him and talk about what your testimony would be and go down and look at the land?
“A. Like yesterday? Or what are you talking about?
“Q. Any time in the past?
“A. Approximately five months ago, we went down and refreshed our memory. I had been on the property previously.
“Q. You were preparing to testify on his behalf at that time, were you not?
“A. Yes, sir, I was.
“Q. Okay. Let me ask you this. Does Section 18 have a north line? Tell the Court. Except for the two portions we drew in there?
“A. No, sir.
“Q. Does Section 7 have a south line except as to the little red line that you drew in there?
“A. No, sir.
“Q. Would you tell the Court whether these surveyors were in error when they said that this tip of this land was in Section 18?
“A. I would say that, including myself, they were, yes, sir.
“Q. And have you ever seen land ac-crete as much as you have just testified to?
“A. Yes, sir, I have.
“Q. Where?
“A. Particularly along Choctaw Point and in this area, the mouth of the bay there.
“Q. And you think, it’s possible that this accreted that much?
“A. Yes, sir.
“Q. Under your rules of—
“A. And similarly, it could erode that much.
“Q. Do you know under your rules of survey, does accreted land belong to the adjoining landowner or do you even know?
“A. I believe it does.
“Q. You believe it does belong to the landowner on which it accretes?
“A. Yes, sir.” (R. 229-30.)
The trial judge, presented with this factual picture, determined that Wolf Bay’s possession of the approximately 2.4 acres of land was peaceable and that the actions of Boyett and Skipper did not defeat Wolf Bay’s title. The trial judge determined that the defendants had failed to establish title in the said property by virtue of 10 years’ adverse possession and failed to establish title under the rule of repose or prescription.
Under our established standard for the review of ore tenus cases, we cannot say that the trial judge’s decision was plainly erroneous. The decision that Wolf Bay was the proper owner of the disputed tract was supported by credible evidence. See Williams v. Romano, supra. Therefore, *771 the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.

. The defendants named in the complaint were Jerry C. Boyett and Cordelia F. Boyett; Robert C. Boyett and Tammy A. Boyett; George H. Skipper and Gary D. Skipper. The answer averred that Robert C. Boyett and Tammy A. *766 Boyett had conveyed their interest and were no longer parties in interest.